```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
MARKUS DORFMANN,                    :    13 Civ. 4999 (JCF)
                                    :    99 Cr. 51 (JCF)
          Petitioner,               :
                                    :         MEMORANDUM
     - against -                    :         AND  ORDER
                                    :
UNITED STATES OF AMERICA,           :
                                    :
          Respondent.               :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Markus Dorfmann is facing removal from the United States as a consequence of his having been convicted some 14 years ago on a plea of guilty to possessing a false identification document with the intent to defraud the United States, in violation of 18 U.S.C. § 1028(a)(4). Mr. Dorfmann now seeks to challenge his conviction on the ground that he received ineffective assistance of counsel because, prior to entering his plea, his attorney misled him with respect to the possible immigration consequences of a conviction. Because he completed his sentence of probation and is not in custody, Mr. Dorfmann has sought relief by means of a petition for a writ of error coram nobis.[1]

---

[1] Mr. Dorfmann filed his petition as a civil proceeding. However, an application for a writ of error coram nobis "is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil [p]roceeding." United States v. Morgan, 346 U.S. 502, 506 n.4 (1954); see also United States v. Pope, Nos. 03 CR 492, 13 CV

Background

Markus Dorfmann was born and raised in Italy. (Letter of Daniel M. Felber dated Jan. 14, 1999 ("Felber Letter"), attached as Exh. B to Petition, at 1). Trained as a musician specializing in percussion, he entered the United States on a tourist visa in 1995 to further his career by studying at the Drummers Collective in New York and playing with various performers. (Felber Letter at 1-2; Affidavit of Markus Dorfmann dated Sept. 5, 2012 ("Dorfmann Aff."), attached as Exh. C to Petition, at 1).[2] Prior to expiration of his visa, Mr. Dorfmann explored ways to extend it or to become a permanent resident of the United States. (Felber Letter at 2; Dorfmann Aff. at 1). He was only able to obtain a three-month extension of the visa, after which it expired. (Felber Letter at 2; Dorfmann Aff. at 1).

Following a friend's advice, Mr. Dorfmann applied for a United States passport, using a birth certificate that indicated that he had been born in Augusta, Georgia, a social security card, and a New York State driver's license. (Dorfmann Aff. at 1; Criminal

---

598, 2013 WL 1563038, at *3 n.2 (E.D.N.Y. April 12, 2013). The Clerk of Court is therefore directed to re-docket the materials relating to the coram nobis application in Mr. Dorfmann's criminal case (99 Cr. 51 (JCF)) and close the civil action (13 Civ. 4999 (JCF)).

[2] Neither the pages nor the paragraphs of the Dorfmann Affidavit are numbered, so the page numbers here simply refer to the sequence of the pages.

Complaint dated Nov. 19, 1998 ("Cr. Compl."), attached as Exh. D to Petition, ¶ 2).  Because the application and supporting documents appeared fraudulent, the authorities investigated further and determined that the Georgia Bureau of Vital Statistics had no record of Mr. Dorfmann having been born in that state. (Cr. Compl, ¶¶ 3-4).  On November 19, 1998, a special agent of the Diplomatic Security Service of the United States Department of State met with Mr. Dorfmann at the New York Passport Office.  (Cr. Compl., ¶ 5). After waiving his Miranda rights, the petitioner stated that he had been born in Italy, had purchased the fake birth certificate, and then had used it to obtain the social security card and driver's license, all of which he submitted with his passport application. (Cr. Compl., ¶¶ 5-6).

On the basis of this information, the Government issued a criminal complaint charging Mr. Dorfmann with making a false statement in connection with a passport application in violation of 18 U.S.C. § 1542 (Cr. Compl.), and he was arrested.  In the course of negotiating with the prosecutor, Mr. Dorfmann's attorney, Daniel M. Felber, submitted a letter in which he stated in part:

> In light of Mr. Dorfmann's background and the circumstances surrounding this incident, it is clear that this was an isolated incident and not a reflection of a criminal character.  He asks your office for a second chance which would allow him to contribute to society. A felony conviction would unduly punish a person in Mr. Dorfmann's position.  It should be noted in the first

3

> instance that Markus is applying for residency in this country and would undoubtedly be rejected by INS in the event of a conviction.  Secondly, Markus' years of hard work to attain his dream of becoming a "New York musician" will have been in vain.
>
> Accordingly, for the reasons set forth above, it is respectfully requested that Mr. Dorfmann be given a second chance in the form of a deferred prosecution or, in the alternative, a misdemeanor disposition.

(Felber Letter at 3).  The Government ultimately agreed to allow Mr. Dorfmann to plead guilty to a misdemeanor, and on January 20, 1999, a criminal information was filed, charging him with possessing a false identification document with the intent to defraud the United States, in violation of 18 U.S.C. § 1028(a)(4). (Information, attached as part of Exh. E to Petition).  The maximum penalty under this section is a term of imprisonment of up to one year, a fine of up to $100,000, and a $25.00 special assessment. 18 U.S.C. §§ 1028(b)(6), 3571(b)(5).

On March 4, 1999, Mr. Dorfmann pled guilty to the information. (Transcript of Plea dated March 4, 1999 ("Plea Tr."), attached as Exh. A to Petition).  As part of the allocution, he stated, "In November of '98, I knowingly purchased a false American birth certificate, with the intent of getting an American passport." (Plea Tr. at 7).  He further acknowledged that he presented the birth certificate to the passport office in Manhattan.  (Plea Tr. at 7).  The petitioner was convicted on the basis of his plea and

4

sentenced to a term of probation of one year and a $25.00 special assessment, and judgment was entered accordingly. (Judgment in a Criminal Case dated April 22, 1999, attached as part of Exh. E to Petition).

    Mr. Dorfmann completed his probation without incident and subsequently married an American citizen. (Dorfmann Aff. at 2; Psychosocial Assessment, attached as part of Exh. F to Petition, at 2). He currently works as general manager of a restaurant and hopes to open his own establishment. (Dorfmann Aff. at 2). On October 9, 2009, the United States Department of Homeland Security initiated removal proceedings against Mr. Dorfmann, asserting that he is removable based on the conviction at issue here. (Affirmation of Samuel M. Braverman dated July 17, 2013 ("Braverman Aff,"), ¶ 7). The Immigration Judge presiding over the removal proceeding has apparently indicated that deportation is imminent, but granted Mr. Dorfmann the opportunity to file the instant petition. (Braverman Aff., ¶ 8).

    Mr. Dorfmann contends that his attorney affirmatively misled him with respect to the possibility that he would be subject to removal as a result of his conviction and argues that this advice violated his Sixth Amendment right to effective assistance of counsel. Accordingly, on July 18, 2013, Mr. Dorfmann filed this petition for a writ of error <u>coram nobis</u> seeking to vacate his

conviction.

Discussion

    A. <u>The Legal Landscape and the Petitioner's Claim</u>

"Coram nobis is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." <u>Fleming v. United States</u>, 146 F.3d 88, 89-90 (2d Cir. 1998) (per curiam). Federal courts have the power to grant writs of error coram nobis pursuant to the All Writs Act, 28 U.S.C. § 1651(a). <u>See</u> <u>United States v. Morgan</u>, 346 U.S. 502, 506-11 (1954); <u>accord</u> <u>Fleming</u>, 146 F.3d at 89.

> [T]o obtain coram nobis relief, a petitioner must demonstrate that "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ."

<u>Fleming</u>, 146 F.3d at 90 (quoting <u>Foont v. United States</u>, 93 F.3d 76, 79 (2d Cir. 1996)).

Here, Mr. Dorfmann contends that the writ should be granted because he was denied effective assistance of counsel in violation of his Sixth Amendment rights. An ineffective assistance of counsel claim is analyzed according to the principles set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under <u>Strickland</u>,

6

a petitioner must demonstrate (1) that the representation he received "fell below an objective standard of reasonableness," id. at 688, and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.  The Strickland standard applies to allegations of ineffective assistance in connection with a guilty plea.  Hill v. Lockhart, 474 U.S. 52, 58 (1985).  In that situation, in order to demonstrate prejudice, "the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id. at 59.  Mr. Dorfmann contends that his attorney misrepresented the immigration consequences that would flow from his conviction and that, absent such advice, he would not have pled guilty.

In Padilla v. Kentucky, 559 U.S. 356, 367-71 (2010), the Supreme Court held that an attorney representing a criminal defendant in plea negotiations has an affirmative duty to advise his client of the immigration consequences of a conviction and that failure to provide such advice deprives the defendant of his Sixth Amendment right to effective assistance of counsel.  Mr. Dorfmann cannot avail himself of Padilla, however, because his conviction became final long before that decision was rendered, and the Supreme Court has determined that Padilla is not retroactive.

Chaidez v. United States, __ U.S. __, __, 133 S. Ct. 1103, 1113 (2013).[3]

Recognizing this, the petitioner instead bases his argument on a Second Circuit decision that predates Padilla: United States v. Couto, 311 F.3d 179 (2d Cir. 2002). There, the court held that "an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is today objectively unreasonable" and violates the client's right to effective assistance. Id. at 188. Although Padilla is not retroactive, Mr. Dorfmann contends:

> Couto continues to control because Padilla did not change the law of the Second Circuit; it merely affirmed a rule that the Second Circuit had already announced. In other words, Petitioner herein would have been entitled to withdrawal of his guilty plea under the Sixth Amendment, as interpreted by Couto, even if Padilla had never become law of the land. It would defy reason to penalize Petitioner for a subsequent decision that does not adversely affect his rights in any way.

(Petitioner's Memorandum of Law ("Pet. Memo.") at 14). At least one court has found that "Couto remains good law in the Second Circuit after Padilla v. Kentucky and Chaidez v. United States." United States v. Pope, Nos. 03 CR 492, 13 CV 598, 2013 WL 1563038,

---

[3] The Government presents a lengthy analysis arguing that Padilla is not retroactive. (Government's Memorandum of Law in Opposition to Petition for Writ of Error Coram Nobis at 9-12). It relies in part on the opinion of the Seventh Circuit in Chaidez v. United States, 655 F.3d 684 (7th Cir. 2011), apparently not realizing that the Supreme Court had already affirmed that decision and settled the issue.

at *1 (E.D.N.Y. April 12, 2013).[4]

To benefit from Couto, Mr. Dorfmann would have to demonstrate that the rule announced there was itself retroactive, since his conviction became final before that decision was handed down. In light of the Supreme Court's reasoning in Chaidez where it found that Padilla announced a "new rule" and could not be applied retroactively, this would be a difficult task. The petitioner in Pope was not obligated to make such a showing, since her conviction was entered in 2004, after Couto had been decided. Id. at *1. However, I need not determine whether Couto established a new rule in this circuit since, even if it is retroactive, Mr. Dorfmann is not entitled to coram nobis relief.

B. Adequacy of Representation

The crux of the petitioner's argument -- that his attorney, Mr. Felber, mistakenly told him that his guilty plea would not lead to his being deported -- is not supported by the record. Indeed, Mr. Dorfmann mischaracterizes the evidence on which he relies. In arguing that counsel "apparently mistakenly believ[ed] that pleading guilty would spare Petitioner the harsh penalty of deportation," he cites Mr. Felber's letter to the prosecutor as

---

[4] This was not a finding with respect to a contested issue, but rather an observation based on the government's concession in that case. Pope, 2013 WL 1563038, at *1.

9

stating that "it is respectfully requested that [Petitioner] be given a second chance in the form of a deferred prosecution or, in the alternative, a non-deportable offense disposition." (Pet. Memo. at 9-10) (emphasis added). The letter, in fact, said that "it is respectfully requested that Mr. Dorfmann be given a second chance in the form of a deferred prosecution or, in the alternative, a misdemeanor disposition." (Felber Letter at 3) (emphasis added). The distinction is important. As it was actually worded, Mr. Felber's letter does not imply that the only type of conviction that Mr. Dorfmann was willing to accept was one that would not result in his deportation.

Furthermore, regardless of any misconception that Mr. Felber might have had about the immigration consequences flowing from a guilty plea, and regardless of what Mr. Felber communicated to the Assistant United States Attorney, Mr. Dorfmann has proffered no evidence of what Mr. Felber actually told him. He has submitted no affidavit in which he recounts any erroneous legal advice. Since the petitioner's legal argument hinges on an alleged affirmative misrepresentation, this is a glaring omission.

    C. Prejudice

Even if Mr. Dorfmann were able to prevail on the first prong of the Strickland test, he falters on the second. "[F]ailure to show sufficient prejudice will doom an ineffective assistance

claim, even where counsel has committed serious error." United States v. Weisser, 417 F.3d 336, 343 (2d Cir. 2005).  Here, in order to demonstrate prejudice, the petitioner would need to show that, if he had received proper legal advice he would not have pled guilty but would have proceeded to trial.  Hill, 474 U.S. at 59. That is, Mr. Dorfmann must demonstrate that a "decision to reject the plea bargain would have been rational under the circumstances." Padilla, 559 U.S. at 372.  He has not done so.

Mr. Dorfmann was facing charges under 18 U.S.C. § 1542, a felony carrying a potential sentence of up to ten years in prison and a fine of up to $250,000.  The evidence against him included his own admission that he had obtained false identification documents and submitted them in connection with a passport application.  (Cr. Compl., ¶ 6).  And, of course, he would have been subject to deportation based on a conviction.  See Grajales v. Mukasey, 303 F. App'x 942, 942-43 (2d Cir. 2008) (holding violation of section 1542 to be a "crime involving moral turpitude," subjecting defendant to removal under 8 U.S.C. § 1227(a)(2)(A)(ii)); Rodriguez v. Gonzales, 451 F.3d 60, 64-65 (2d Cir. 2006) (same); Bisaillon v. Hogan, 257 F.2d 435, 437-38 (9th Cir. 1958) (same).

Against this, the petitioner was offered the opportunity to plead guilty to a misdemeanor that carried a maximum sentence of

11

one year imprisonment and, indeed, he received only a year of probation. To the extent he is subject to deportation as a result, it would certainly have appeared to be a less likely outcome, as a practical matter, than if he had been convicted of a felony. Furthermore, Mr. Dorfmann has proffered no sworn statement to the effect that, had he known that his conviction would have subjected him to deportation, he would have rejected the negotiated plea and gone to trial. Such a representation would, in any event, be implausible.[5] See Rodriguez v. United States, No. 98 Cr. 764, 2012 WL 6082477, at *8-9 (S.D.N.Y. Dec. 4, 2012) (finding no prejudice from failure to advise of immigration consequences where evidence was strong and defendant avoided felony conviction by pleading guilty to 18 U.S.C. § 1028(a)(4)). Accordingly, the petitioner has not satisfied the second prong of Strickland.

  D. Delay

  Finally, even if Mr. Dorfmann were able to demonstrate that he had been deprived of adequate representation of counsel in violation of his Sixth Amendment rights, he would nevertheless be

---

[5] The petitioner argues that he was prejudiced simply by forfeiting the right to plead not guilty and go to trial. (Petitioner's Reply Memorandum of Law in Support of Petition for Writ of Coram Nobis ("Pet. Reply") at 4-6). If that were enough, any petitioner challenging the adequacy of representation in connection with a guilty plea would be relieved of the obligation of demonstrating that, with better advice, he would not have pled guilty. That is not the law.

foreclosed from coram nobis relief. Although "the time for filing a petition is not subject to a specific statute of limitations," Telink, Inc. v. United States, 24 F.3d 42, 45 (9th Cir. 1994), this remedy "may be barred by the passage of time."  Foont, 93 F.3d at 79.

That time starts to run when the petitioner "knew or should have known . . . of the facts underlying his current claim."  Id. at 80; accord Rodriguez, 2012 WL 6082477, at *10; Evangelista v. United States, No. 11 CV 5085, 2012 WL 3818109, at *3 (E.D.N.Y. Sept. 4, 2012).  Here, that occurred no later than October 9, 2009, when Mr. Dorfmann was served with a Notice to Appear by the Department of Homeland Security.  That alerted him to the fact that he was subject to deportation as a consequence of his conviction. See Yong Wong Park v. United States, 222 F. App'x 82, 83 (2d Cir. 2007) (finding petitioner did not unreasonably delay when he filed petition promptly after government sought deportation); Korac v. United States, No. 93 Cr. 848, 2011 WL 2365811, at *4 (S.D.N.Y. June 6, 2011) ("Where a petitioner's filing is delayed because the start of deportation proceedings provides the first indication that an earlier conviction has rendered the petitioner subject to removal, a sound reason for the delay exists.").  By that time, the legal predicate for his claim had been established, as Couto had been decided.

13

Yet, Mr. Dorfmann waited more than three years, until July 2013, to file the instant petition.  In order to qualify for <u>coram nobis</u> relief, he must present "sound reasons" for this delay.  <u>See</u> <u>Foont</u>, 93 F.3d at 79; <u>Nicks v. United States</u>, 955 F.2d 161, 167-68 (2d Cir. 1991).  "The sufficiency of the reasons bears an inverse relationship to the length of the delay -- the longer the delay, the more compelling must be the reasons."  <u>Tocci v. United States</u>, 178 F. Supp. 2d 176, 181 (N.D.N.Y. 2001).  Here, Mr. Dorfmann has offered no legitimate rationale for his dilatoriness.  While he was actively involved during this time in attempting to stave off his removal (Pet. Reply at 6), that does not excuse his failure to initiate proceedings to challenge his conviction.  <u>See</u> <u>United States v. Sash</u>, 374 F. App'x 198, 200 (2d Cir. 2010) (finding "unavailing" petitioner's argument that he delayed filing petition "because he was preoccupied with other proceedings").  An unjustified delay of this length is fatal to an application for <u>coram nobis</u>.  <u>See</u> <u>id.</u> at 199 (four-year delay); <u>Rodriquez</u>, 2012 WL 6082477, at *10 (delay of more than two years); <u>Rojas v. United States</u>, No. 11-62267-CIV., 2012 WL 3150052, at *7 (S.D. Fla. July 16, 2012) (one-year delay); <u>Hyun Ahn v. United States</u>, Nos. 94 Cr. 982, 02 Civ. 8031, 2003 WL 21910855, at *1, 3 (S.D.N.Y. Aug. 8, 2003) (approximately four-year delay), <u>aff'd</u>, 96 F. App'x 43 (2d Cir. 2004); <u>Mastrogiacomo v. United States</u>, No. 90 Cr. 565, 2001 WL

799741, at *2 (S.D.N.Y. July 16, 2001) (three-year delay). Therefore, in addition to lacking merit, Mr. Dorfmann's petition is untimely.

Conclusion

For the reasons set forth above, the petition for a writ of error coram nobis is denied.

SO ORDERED.

*/s/ James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       January 23, 2013

Copies mailed this date:

Samuel M. Braverman, Esq.
Law Office of Sam Braverman
901 Sheridan Ave.
Bronx, NY 10451

Natalie Lamarque, Esq.
Assistant United States Attorney
One St. Andrew's Plaza
New York, NY 10007